# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **Sekai Zankel,** | | |
| **Plaintiff** | | **CIVIL ACTION** |
| | : | No. 05-2760 |
| **v.** | : | |
| | : | |
| **Temple University, et al.,** | | |
| **Defendants** | | |

## MEMORANDUM OPINION AND ORDER

**RUFE, J.**                                                                                      **April 24, 2006**

Before the Court is the Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(6)[1] (the "Motion to Dismiss") filed by Temple University (the "University"), Peter Liacouras ("Liacouras"), Joyce A. Joyce ("Joyce"), Deirdre Walton ("Walton"), and Corrinne Caldwell ("Caldwell") (collectively "Defendants").[2] In this case, Sekai Zankel ("Plaintiff") brings suit against Defendants for alleged violations of the American with Disabilities Act ("ADA"),[3] the Rehabilitation Act of 1973 (the "Rehabilitation Act"),[4] 42 U.S.C. § 1983, the Family Medical Leave Act ("FMLA"),[5] the Pennsylvania Human Relations Act ("PHRA"), and several state common law causes of action. For the reasons set forth below, the Court grants the Motion to Dismiss.

## I.    Facts and Procedural History

---

[1] Doc. #3.

[2] At the time of the events giving rise to this suit, Liacouras was the president of Temple University, Joyce was the chair of the Department of African-American Studies at Temple University, Walton was an employee relations specialist in Temple University's Department of Human Resources, and Caldwell was Temple University's acting provost.

[3] 42 U.S.C. §§ 12101-17 (2005).

[4] 29 U.S.C. §§ 791-794e  (2005).

[5] 29 U.S.C. §§ 2601-54  (2005).

In or about August 1997, the University hired Joyce to chair the Department of African-American Studies (the "Department").[6]  At the time of Joyce's hiring, Plaintiff was the head secretary in the Department.[7]  Plaintiff avers that, beginning in September 1997, Joyce significantly increased her job responsibilities as head secretary.  Specifically, Plaintiff claims that Joyce required her "to answer telephones in several different offices, move[] . . . heavy boxes and equipment," and otherwise clean and maintain the Department's offices.[8]

Plaintiff first complained about her increased responsibilities to Joyce and then to Temple University's Department of Human Resources ("DHR").[9]  However, Plaintiff claims that Joyce ignored her and that DHR instructed Plaintiff to meet Joyce's expectations.[10]  Plaintiff further claims that soon after she complained to DHR, Joyce further expanded Plaintiff's job duties to include "heavy physical labor."[11]

On or about September 18, 1997, Plaintiff tripped and fell while running to answer a telephone at work.  As a result of the fall, Plaintiff claims to have suffered headaches and other physical pain.[12]  Thereafter, Plaintiff asked Joyce—for the first time—to reduce her physical duties to allow her time to recover from her injuries.  Plaintiff claims that Joyce denied this request.  In fact,

---

[6] Compl. ¶ 11.

[7] Compl. ¶ 9.

[8] Compl. ¶ 12.

[9] Compl. ¶ 14-15.

[10] Id.

[11] Compl. ¶ 16.

[12] Compl. ¶ 17.

Plaintiff claims that in response to her request Joyce increased her physical duties.[13]

Around the same time, Joyce assigned Plaintiff the additional task of transporting a large television on a rolling cart to classrooms throughout the academic building. Due to the size of the equipment and the instability of the rolling cart, Plaintiff often had to reposition the television manually, which she claims exacerbated her ongoing physical maladies. In response to this additional duty, Plaintiff asked Joyce—for the second time—to accommodate her injuries, but was denied once more.[14]

Plaintiff claims that she suffered physical pain and weakness due to the taxing nature of her job and the manner in which Joyce treated her. In fact, Plaintiff claims that her condition worsened over time, as her job requirements did not change and Joyce's alleged mistreatment persisted. Due to headaches, dizziness, and nausea, Plaintiff was admitted to Temple University Hospital on October 24, 1997. There, Plaintiff alleges that health care professionals, alarmed at her condition, provided Plaintiff with a work injury form and a worker's compensation form, instructed Plaintiff to seek counseling, and directed her to take time off from work.[15]

Plaintiff alleges that she subsequently submitted the work injury form and the worker's compensation form to Joyce—in accordance with Temple University's internal policies—but Joyce refused to submit the forms to process her worker's compensation claim.[16] On or about November 10, 1997, Plaintiff delivered a written complaint to President Liacouras detailing

---

[13] Compl. ¶ 18.

[14] Compl. ¶¶ 19 - 20.

[15] Compl. ¶¶ 21 - 22.

[16] Compl. ¶ 23.

3

Joyce's actions.  Over the next several months, Plaintiff filed complaints against Joyce with her union, Provost Caldwell, and the University's Personnel Department.  However, Plaintiff claims that no one took action in her behalf.[17]

In December 1997,[18] Plaintiff asked Joyce—for the third time—to alter her job responsibilities in light of her physical and emotional condition, but Joyce again refused to modify Plaintiff's duties as Head Secretary.[19]  Around this time, Plaintiff claims that her condition worsened to the point where "she could barely walk" as a result of her demanding responsibilities at work. From January 1998 through March 1998, Plaintiff underwent an extensive physical examination.[20]

Around this same time, Plaintiff filed additional grievances against Joyce with her union, which instructed her to adhere to her supervisor's orders.  Plaintiff claims that Joyce repeatedly increased the demands on Plaintiff after she filed these grievances.  Nonetheless, Plaintiff claims to have attempted to meet Joyce's demands.  As a result of her effort, Plaintiff claims that her physical and emotional condition deteriorated even further.[21]

In April 1999, Plaintiff's physicians diagnosed her with "left-side weakness with consistent left carpal tunnel syndrome" and multiple sclerosis.[22]  At that time, Plaintiff alleges that

---

[17] Compl. ¶¶ 25 - 26.

[18] Plaintiff's Complaint avers that she made her third request to Joyce in December 1998; however, in light of the fact that the Complaint details Plaintiff's experiences under Joyce generally in a chronological fashion the third request seems to have been made in December 1997.

[19] Compl. ¶ 27.

[20] Compl. ¶¶ 28 - 30.

[21] Compl. ¶¶ 31-33.

[22] Compl. ¶ 34.  Plaintiff's original diagnosis of multiple sclerosis was incorrect.  Her condition was diagnosed later as brachila plexus.  See. Def.'s Mot. to Dismiss, Ex. B at ¶ 6.

4

she informed Joyce of her diagnoses and requested—for the fourth time—a modification of her job duties, but Joyce again refused her request.  In May 1999, Plaintiff's physician recommended that she be hospitalized for ongoing treatment.[23]  Thereafter, Plaintiff submitted a request to DHR to take medical leave under the University's Family and Medical Leave policy.  On June 24, 1999, Temple University notified Plaintiff that her medical leave was approved from May 17, 1999 to July 30, 1999.[24]

Plaintiff returned to work on August 2, 1999.  Upon her return, Plaintiff requested—for the fifth time—that Joyce modify her job responsibilities to accommodate her physical ailments, and for the fifth time Joyce refused to alter Plaintiff's duties.[25]  In January 2000, Plaintiff's physician re-examined her and determined that her physical condition had deteriorated further.[26]  As a result, Plaintiff's physician directed her to return to the hospital in March 2000.[27] Plaintiff was hospitalized and treated from March 18, 2000 to March 20, 2000.  Plaintiff claims that she called Joyce several times over these three days but was unable to reach her.  In fact, Plaintiff claims that she called Joyce and the Department generally for a week but was unable to contact anyone.[28]

On May 16, 2000, Plaintiff submitted an additional request for a medical leave of

---

[23] Compl. ¶ 35.

[24] Compl. ¶ 37.

[25] Compl. ¶ 38-39.

[26] Compl. ¶ 40.

[27] Id.

[28] Compl. ¶ 41-44.

absence.  Plaintiff claims to have completed the form and hand-delivered it to DHR, but was forced to leave the form unattended because no one was present in the DHR office when she delivered the leave of absence request.[29]  Thereafter, Plaintiff claims to have made "constant attempts to contact [DHR] in order to obtain information regarding her return to work from medical leave."  However, Plaintiff claims that DHR never contacted her to apprise her of the status of her leave of absence request.[30]

Over one year later, Plaintiff received a letter dated May 9, 2001 (the "2001 letter")[31] stating that Plaintiff had voluntarily resigned her position as Head Secretary by failing to return to work by the deadline established in the letter approving her medical leave of absence.  The May 9th letter enclosed another letter, dated June 29, 2000 (the "2000 letter"), wherein the University approved Plaintiff's request for a medical leave of absence and established March 20, 2001 as her return date.  Plaintiff claims never to have received the 2000 letter prior to receiving it as an enclosure to the 2001 letter.[32]

Upon learning that she was no longer employed at the University, Plaintiff claims that she repeatedly attempted to retrieve personal items from the Department—including valuable pieces of art.  Plaintiff claims that she attempted to contact Joyce to recover these items, but Joyce "refused

---

[29] Compl. ¶ 45.

[30] Compl. ¶ 41-46.

[31] Plaintiff's *pro se* administrative charge with the PHRA provides the date of the letter is May 7, 2001, while her Complaint states the date of the letter is May 9, 2001.  For purposes of analysis of Defendant's statute of limitations arguments, the Court accepts the date of the letter as May 9, 2001.

[32] Compl. ¶ 47-48.

to take or return her [telephone] calls."[33]

On June 26, 2001, Plaintiff filed a *pro se* administrative charge with both the Pennsylvania Human Relations Commission ("PHRC") and the Equal Employment Opportunity Commission ("EEOC"). On November 28, 2004, the PHRC dismissed Plaintiff's charge. In March 2005, the EEOC notified Plaintiff that she could bring a civil action in federal court. Plaintiff filed her Complaint in this Court on June 9, 2005.[34]

Plaintiff's single count *pro se* administrative charge with the PHRC alleges "Disability Discrimination."[35] In her charge, Plaintiff alleges the following "underlying facts" as the basis of her "disability discrimination" claim:

1.     Plaintiff originally was diagnosed with multiple sclerosis but her condition subsequently was identified as brachila plexus.

2.     "[O]n or about May 16, 2000, [Plaintiff] submitted written request for a medical leave of absence."

3.     Temple University's agents did not respond to Plaintiff's request for a medical leave of absence.[36]

4.     Beginning in November 2000—approximately six months after she submitted her request for a medical leave of absence—Plaintiff began to inquire "on [her] own and through [her] union about the formal terms of [her] leave of absence[.]"

5.     Plaintiff was not informed of the terms or extent of her medical leave of absence.

---

[33] Compl. ¶ 49-50.

[34] Compl. ¶ 52-55.

[35] Pl.'s Resp. to Def.'s Mot. to Dismiss, Ex. B.

[36] One of several disparities between Plaintiff's administrative charge and the Complaint filed here is the fact that Plaintiff's charge names only Temple University as a respondent to the alleged disability discrimination, while her Complaint names the University as well as four university employees.

6.     [O]n May 7, 2001, Deidre Walton of Temple University's Office of Human Resources informed Plaintiff in writing that her office had mailed a letter, dated June 29, 2000, wherein Plaintiff was notified that her medical leave of absence ended on March 28, 2001.

7.     In the May 7, 2001 letter, Plaintiff learned that "since [she] had not returned to work on March 28, 2001," Temple University considered Plaintiff's position resigned.

Based on the foregoing "underlying facts," Plaintiff contends in her charge that the University "discharged [her] on the pretext that [she] had not returned to work on the expiration of [her] leave of absence" in violation of "section 5(a) of the [PHRA]."[37]

## II.   <u>Legal Standard</u>

When considering a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff.[38]   A court may grant a motion under Rule 12(b)(6) only "if it appears to a certainty that no relief could be granted under any set of facts which could be proved."[39]   Rule 8(c) requires a party to set forth affirmatively a statute of limitations defense in its responsive pleading.[40]   Additionally, Rule 12(b) states that "[e]very defense shall be asserted in the responsive pleading thereto if one is required."[41]

However, Rule 12(b) permits parties to assert seven different defenses by motion: (1)

---

[37] Pl.'s Resp. to Def.'s Mot. to Dismiss, Ex. B.

[38] <u>Rocks v. City of Philadelphia</u>, 868 F.2d 644, 645 (3d Cir. 1989).

[39] <u>D.P. Enter. Inc., v. Bucks County Comty. Coll.</u>, 725 F.2d 943, 944 (3d Cir. 1984).

[40] Fed. R. Civ. P. 8(c).

[41] Fed. R. Civ. P. 12(b).

lack of subject matter jurisdiction; (2) lack of personal jurisdiction; (3) "improper venue"; (4) "insufficiency of process"; (5) "insufficiency of service of process"; (6) "failure to state a claim upon which relief can be granted"; and (7) "failure to join a party under Rule 19."[42]   Although Rule 12(b) does not make an express exception to the responsive pleading requirement of Rule 8(c) for the affirmative defense of statute of limitations, the so-called "Third Circuit Rule" permits a defendant to assert a limitations defense in a motion to dismiss pursuant to Rule 12(b)(6) if "'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitation.'"[43]

## III.   Discussion

### A. ADA Claim

Concerning the disability discrimination claims set forth in Plaintiff's Complaint, Defendants argue that Plaintiff fails to state a claim for disability discrimination because the underlying factual allegations in her administrative charge are different from the factual allegations set forth in her federal law suit.  The Court herein does not reach the merits of this argument since determination of the timeliness of Plaintiff's federal law claims precedes determination of their validity.

Defendants contend that Plaintiff's disability discrimination claim under the ADA (Count I) must be dismissed as untimely.   Title I of the ADA[44] regulates discrimination in

---

[42] Id.

[43] Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (quoting Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975)).

[44] 42 U.S.C. §§ 12111-17 (2000).

employment.[45]   Title I employment discrimination claims are adjudicated under the powers, remedies, and procedures of Title VII of the Civil Rights Act of 1966 ("Title VII").[46]  Title VII's enforcement provisions,[47] therefore, outline the limitations period for filing administrative charges under the ADA.  Specifically, section 2000e-5(e)(1) provides:

> A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . .  except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice . . . such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred . . . .[48]

---

[45] See id.

[46] See § 12117(a).

[47] 42 U.S.C. § 2000e-5 (2000).

[48] 42 U.S.C. § 2000e-5(e)(1).  Further, section 2000e-5(c) provides that where "the alleged unlawful employment practice occurr[s] in a State . . . which has a State or local law prohibiting the unlawful employment practice alleged" and that state "establish[es] or authoriz[es] a State or local authority to grant or seek relief from such practice . . . no charge may be filed . . . [with the EEOC] . . . "by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or federal law."  42 U.S.C. § 2000e-5(c).  If a plaintiff fails to abide the procedures set forth in section 2000e-5(c), the EEOC may hold the prematurely filed Complaint in "suspended animation" and automatically file it upon termination of the state proceedings.  See Love v. Pullman Co., 404 U.S. 522, 526 (1972).

Here, Pennsylvania's PHRA prohibits the employment practices alleged.  See Pa. Cons. Stat. § 955 (2005).  Additionally, Pennsylvania has authorized a state agency to address claims of discrimination in the Commonwealth.  See Pa. Cons. Stat. § 957 (2005).  Therefore, Plaintiff's charge with the EEOC was filed prematurely, as it was filed contemporaneously with her charge with the PHRC on June 26, 2001.  Compl. ¶ 52.  Around November 8, 2004, the PHRC dismissed Plaintiff's state administrative charge.  Compl. ¶ 54.  Approximately four months later, in early March, the EEOC issued notification permitting Plaintiff to bring a civil action in this Court.

Indeed, a plaintiff's journey to federal court from filing a charge with the EEOC alleging employment discrimination is inaugurated by notification from the EEOC that the plaintiff may file a complaint in federal court.  The notification permitting suit issues either upon the dismissal of the plaintiff's charge by the EEOC or upon the expiration of a 180 day period wherein the EEOC fails to file a civil action on the basis of the allegations charged.  Here, since Plaintiff does not reveal whether notification permitting suit issued on the basis of administrative dismissal or the passing of 180 days and since the EEOC did not take action upon Plaintiff's charge pending the determination of the PHRC charge, it is difficult to ascertain whether the EEOC made a determination concerning

Federal courts lack authority to address discrimination claims under the ADA unless a claimant timely files an administrative complaint. The Supreme Court instructs that "discrete discriminatory acts are not actionable if time barred," and further teaches that [e]ach discrete discriminatory act starts a new clock for filing charges alleging that act."[49]

Here, Plaintiff's ADA claim is based on her "repeated complaints and attempts to receive reasonable accommodation" and Defendant's alleged refusal to modify Plaintiff's job responsibilities.[50] Therefore, each time Plaintiff made a request for a reasonable accommodation that went denied, a new clock for filing charges alleging that act began. Plaintiff's Complaint contains five separate allegations of denied requests for work accommodations. The first two alleged requests for accommodations were made in 1997.[51] The three additional requests for accommodation were made in December 1998, April 1999, and sometime between August 1999 and January 2000.[52] Plaintiff's EEOC complaint was filed on June 26, 2001. Therefore, since Plaintiff's EEOC complaint was filed more than three hundred days after she made her final request for accommodation, Plaintiff's ADA claim is dismissed as untimely.[53]

---

the timeliness of Plaintiff's federal administrative charge. Without the benefit of the basis for the EEOC's right to sue notification, the Court takes up the question of the timeliness of Plaintiff's administrative charges in the first instance.

[49] Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).

[50] Compl. ¶¶ 57-58.  "In general, an accommodation is any change in the work environment that enables an individual with a disability to enjoy equal employment opportunities." 29 C.F.R., pt. 1630, app. § 1630.2(o).

[51] Compl. ¶¶ 18, 20.

[52] Compl. ¶¶ 27, 34, 39.

[53] Plaintiff contends that Defendants' alleged discriminatory acts—dating back to 1997—were timely filed under the continuing violation theory. As the Third Circuit teaches:

B. <u>Rehabilitation Act Claim</u>

Next, Defendants argue that Plaintiff's disability discrimination claim under the Rehabilitation Act (Count I) should be dismissed as untimely. Defendants argue that Plaintiff's Rehabilitation Act claim is subject to a two-year statute of limitations.[54] Thus, Defendants contend that, Plaintiff's limitations period ran on this claim on May 9, 2003 (two years from the day Plaintiff received the 2001 letter).[55] However, Plaintiff's Complaint bases her Rehabilitation Act claim on Defendants' alleged failure reasonably to accommodate Plaintiff's disability. As such, receipt of the 2001 letter is an irrelevant fact when determining the start date for the limitation period on Plaintiff's Rehabilitation Act claim. Rather, the relevant fact for determining the commencement of the limitation period on Plaintiff's Rehabilitation Act claim is the date of the alleged discriminatory act—in this case the refusals to accommodate Plaintiff's disability.

---

> To establish a claim falls within the continuing violation theory, the plaintiff must do two things. First, he must demonstrate that at least one act occurred within the filing period . . . . Next, the plaintiff must establish that the harassment is "more than the occurrence of isolated or sporadic acts of intentional discrimination." Once the plaintiff has alleged sufficient facts to support use of the continuing violation theory . . . the [relevant limitations] period becomes irrelevant . . . . Plaintiff may then offer evidence of, and recover for, the entire continuing violation.

<u>West v. Philadelphia Elec. Co.</u>, 45 F.3d 744, 754-55 (3d Cir. 1995). Here, Plaintiff had 300 days from the most recent discriminatory act within which to file an administrative charge to overcome a time bar on the strength of the continuing violation theory. Based on the facts, as alleged by Plaintiff, the most recent discriminatory act occurred some time between August 1999 and January 2000. As such, Plaintiff had until some time in late 2000 to file her administrative charge. But, Plaintiff's administrative charge was not filed until June 2001—well after the 300 day window had closed. Therefore, Plaintiff fails to demonstrate that any alleged discriminatory act occurred within the filing period and cannot overcome the time bar on the basis of the continuing violation theory.

[54] Defendants are correct in this assertion insofar as "'[i]n this distict, it has repeatedly been held that Pennsylvania's two year statute of limitations for personal injury claims governs claims under . . . the Rehabilitation Act.'" <u>Barclay v. Amtrak</u>, 343 F.Supp.2d 429, 433 (E.D. Pa. 2004) (quoting <u>Saylor v. Ridge</u>, 989 F.Wupp. 680, 686 (E.D. Pa. 1998).

[55] Def.'s Mot. to Dismiss at 8.

12

Plaintiff contends that Defendants' argument overlooks Title VII's exhaustion requirement for claims brought under section 501 of the Rehabilitation Act.[56]  Plaintiff is correct.  However, section 501 is applicable only to federal agencies.  Here, Plaintiff brings suit against a private university, not a federal agency; therefore, section 501 does not apply.  Section 504 of the Rehabilitation Act, however, applies to programs or activities receiving financial assistance from the federal government.[57]  Thus, inasmuch as Plaintiff alleges violation of the Rehabilitation Act by Temple University, the claim comes pursuant to this section.[58]

The thrust of Plaintiff's argument is that the two-year statute of limitations for bringing a Rehabilitation Act claim in federal court is tolled pending the administrative determination.[59]  To support this contention, Plaintiff points out that "before bringing . . . an action under the Rehabilitation Act, a prospective plaintiff must *timely* exhaust all available administrative remedies."[60]  Based on the foregoing, determination of the timely exhaustion of Plaintiff's Rehabilitation Act claim is a necessary antecedent to determining whether or not the statute of limitations is tolled pending administrative review.

---

[56] Pl.'s Resp. to Def.'s Mot. to Dismiss at 10 (citing Spence v. Straw, 54 F.3d 196, 201 (3d Cir. 1995)).

[57] 29 U.S.C. § 791 (2005); 29 U.S.C. § 794 (2005).

[58] There appears to be no individual liability under the Rehabilitation Act for employees of colleges and universities receiving federal aid.  See Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002) ("Because the individual defendants do not receive federal aid, [plaintiff] does not state a claim against them under the Rehabilitation Act.").

[59] Pl.'s Resp. to Def.'s Mot. to Dismiss at 10.

[60] Id. at 10-11 (quoting Campbell v. Potter, No. 01-4517, slip op. at 2 (E.D. Pa. Oct. 17, 2005)) (emphasis added).

As discussed, Plaintiff's Rehabilitation Act claim is premised on Defendants' alleged failure to make reasonable accommodations.  According to the facts as plead, Defendants' most recent failure to make accommodations to Plaintiff's job responsibilities occurred sometime between August 1999 and January 2000.[61]  Since Plaintiff's Complaint fails to identify the exact date of her last request for accommodation, it is impossible for the Court to determine the exact date on which Plaintiff's limitations period ran for filing an administrative charge on this claim.  However, assuming, *arguendo*, that Plaintiff's most recent request for accommodation was made sometime in January 2000—the latest possible time period according to the Complaint—Plaintiff's administrative charge must have been filed 300 days from the alleged discriminatory act, or some time in late 2000.  Plaintiff's administrative charge was not filed until July 26, 2001.[62]  Therefore, due to Plaintiff's failure to timely exhaust the administrative remedies on her Rehabilitation Act claim, the claim is dismissed.

C.  Section 1983 Claims

Next, Defendants argue that Plaintiff's claims under section 1983 are time barred.  Plaintiff's first claim under section 1983 stems from Defendants' alleged failure to accommodate Plaintiff's disability (Count I).  Additionally, Plaintiff avers that Defendants retaliated against her

---

[61] See Compl. ¶¶ 38-43.

[62] Additionally, the Court notes that Plaintiff's argument for tolling the statute of limitations pending administrative review is particularly dubious in light of the fact that the factual basis of Plaintiff's administrative charge—receipt of the 2001 letter wherein Plaintiff allegedly learned for the first time that the terms of her leave of absence required her to return to work on March 28, 2001—and the facts underlying Plaintiff's Rehabilitation Act claim in this Court—failure to make reasonable work accommodations for Plaintiff's disability—are thoroughly dissimilar.  Put another way, Plaintiff argues for tolling of the statute of limitations on her Rehabilitation Act claim based on an administrative charge that is factually distinct from the basis of that claim.  However, the Court has found no support in this, or any other, Circuit for Plaintiff's proposition, and today we will not adopt the argument as well.

on several different occasions by "consistently increasing Plaintiff's job duties in such a way as to exploit and exacerbate Plaintiff's known . . . disabilities" in violation of section 1983 (Count III). Section 1983 claims are subject to Pennsylvania's two-year statute of limitations.[63]

Plaintiff concedes that her section 1983 claims are subject to a two-year statute of limitations, but argues that the statute of limitations on these claims were tolled pending the determination of her administrative charge with the EEOC.[64]  Plaintiff's argument fails.  Inasmuch as the administrative remedies available to Plaintiff for her ADA claim are independent of the remedies available to her in federal court for her section 1983 claims, so too is Plaintiff's responsibility to prosecute her claims in each venue in a timely manner.[65]  Therefore, Plaintiff's attempt to seek repose from the statute of limitations on her section 1983 claim by filing administrative charges with the EEOC for an ADA claim is misplaced.

The statute of limitations on Plaintiff's section 1983 claim for retaliation began to run from the date of the alleged retaliatory act.  And, for Plaintiff's section 1983 claim for disability discrimination, the limitations period began to run from the date of Defendant's alleged refusal to make reasonable accommodations.  According to Plaintiff's Complaint, all of the alleged retaliatory acts took place prior to March 18, 2000.[66]  And, as discussed, Plaintiff's Complaint avers that

---

[63] See Garvin v. City of Philadelphia, 354 F.2d 215, 220 (3d Cir. 2003).

[64] Pl.'s Resp. to Def.'s Mot. to Dismiss at 10.

[65] See Johnson v. Ry. Express Agency, Inc., 421 U.S. 454, 466 (1975).

[66] Plaintiff alleges that Joyce retaliated against her "[b]y consistently increasing Plaintiff's job duties in such a way as to exploit and exacerbate Plaintiff's known physical and mental disabilities."  Compl. ¶ 65.  Plaintiff also claims that Joyce retaliated against her based on: "Plaintiff's requests for accommodation for her disabilities, testimony provided in a lawsuit against Joyce by a Temple faculty member[,] and her various complaints to various authorities employed by Temple regarding her suffering of unlawful treatment at Joyce's hands."  Compl. ¶ 66.

Defendant's most recent failure to make accommodations to her job duties occurred sometime between August 1999 and January 2000.

Therefore, the statute of limitations on Plaintiff's section 1983 claim for retaliation ran on May 18, 2002—at the latest. And the statute of limitations on Plaintiff's section 1983 claim for disability discrimination ran sometime in January 2002—at the latest.   Plaintiff filed her Complaint in this Court on June 9, 2005—three years, two months, and twenty-two days late on the retaliation claim and approximately three years and six months late on the employment discrimination claim.   As such, Plaintiff's section 1983 claims are dismissed as time barred.

D. FMLA Claim

Next, Defendants argue that Plaintiff's FMLA claim (Count II) must be dismissed as untimely.  What Plaintiff calls her "disability discrimination" claim in her administrative charge with the PHRC, she calls her FMLA claim in federal court in that the factual basis of her FMLA claim mirrors the "underlying facts" of her "disability claim" in the administrative charge.  Specifically, Plaintiff contends that Defendants violated the FMLA "[i]n failing to properly inform Plaintiff of both the fact that her request for an extension of her medical leave had been granted[,]" in failing "to inform Plaintiff of her expected date of return to work [, and] subsequently terminating Plaintiff's employment on the basis that she did not return on or before that date."[67]

Plaintiff argues that the statute of limitations on her FMLA claim was tolled pending

_____

Based on the foregoing, Plaintiff makes no allegation that she was retaliated against because she filed an ADA claim or that the form of retaliation was her eventual termination.  Therefore, the Court need not address whether or not section 1983 retaliation claims based on Plaintiff's filing an ADA claim and/or Plaintiff's termination have merit or were timely filed.

[67] Compl. ¶ 62.

16

review of her administrative charge with the EEOC.[68]  However, this argument fails because unlike the ADA and PHRA, the FMLA does not "require pursuit of administrative remedies before a plaintiff may file a complaint in court."[69]  And since Plaintiff's FMLA claim is completely distinct from her ADA claim—the claim for which she filed her administrative charge with the EEOC—the statute of limitations on the FMLA claim is not tolled pending review of an unrelated claim.[70]

Under the FMLA, a plaintiff is required to file suit "not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought."[71]  Where a plaintiff alleges willful violation of the FMLA, the suit must be filed "within 3 years of the date of the last event constituting the alleged violation for which such action is brought."[72]  As discussed, the basis of Plaintiff's FMLA claim is Defendants' alleged failure "to properly inform Plaintiff of both the fact that her request for an extension of her medical leave had been granted and to inform Plaintiff of her expected date of return to work, subsequently terminating Plaintiff's employment on the basis that she did not return to work before that date."[73]

Based on the foregoing, the most recent basis for Plaintiff's FMLA claim is the notification of termination she received by letter in May 2001.  Therefore, even if the facts as plead established a willful violation of the FMLA, the statute of limitations on Plaintiff's FMLA claim ran

---

[68] See Pl.'s Resp. to Def.'s Mot. to Dismiss at 11.

[69] Churchill v. Star Enter., 183 F.3d 184, 190 (3d Cir. 1999).

[70] See Johnson, 421 U.S. at 466.

[71] 29 U.S.C. § 2617(c)(1) (2005).

[72] 29 U.S.C. § 2617(c)(2) (2005).

[73] Compl. ¶ 62.

in May 2004. Plaintiff filed her Complaint here alleging violation of the FMLA on June 9, 2005. As such, Plaintiff's FMLA claim is dismissed as untimely.

### E. State Law Claims

Finally, Defendants argue that Plaintiff's disability discrimination claim under the PHRA (Count I) should be dismissed as untimely. However, because all of Plaintiff's federal causes of action are time barred, "there exists no independent jurisdictional basis to maintain a PHRA claim against [Defendants] in federal court."[74] Further, the Court declines to exercise jurisdiction over Plaintiff's PHRA claim as well as Plaintiff's state law fraud (Count IV), intentional infliction of physical harm (Count V), violation of public policy – worker's compensation (Count VI), and negligence (Counts VII and VIII) claims.[75]

### IV. Conclusion

For the foregoing reasons, the Court grants Defendant's Motion to Dismiss.

An appropriate Order follows.

---

[74] Dici v. Pennsylvania, 91 F.3d 542, 553 (3d Cir. 1996). See also 43 Pa. Stat. Ann. § 962(c)(1) (authorizing complainants under the PHRA to bring a civil action in state court based on alleged violation of the act at the conclusion of state administrative review).

[75] 28 U.S.C. §1367(c)(3) (2000).

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **Sekai Zankel,** | : | |
| **Plaintiff** | : | **Civil Action** |
| | : | **No. 05-2760** |
| **v.** | : | |
| | : | |
| **Temple University, et al.,** | : | |
| **Defendants** | : | |

**ORDER**

      **AND NOW**, this 24th day of April 2006, upon consideration of Defendants'

Motion to Dismiss the Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) [Doc.

#3], Plaintiff's Response thereto [Doc. #4], and Defendants' Reply [Doc. #7], and for the reasons

set forth in the attached Memorandum Opinion, it is hereby **ORDERED** that Defendants'

Motion to Dismiss is **GRANTED**.

      It is further **ORDERED** that all state law claims in Counts I, IV, V, VI, VII, and

VIII of Plaintiff's Complaint are **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C.

1367(c).

      The Clerk of Court is directed to CLOSE this case.

      It is so **ORDERED**.

                    **BY THE COURT:**

                    **/s/ Cynthia M. Rufe**
                    **CYNTHIA M. RUFE, J.**